ALAN K. AND PATTI R. BROOKS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brooks v. Commissioner
Docket No. 17552-90
United States Tax Court
T.C. Memo 1992-295; 1992 Tax Ct. Memo LEXIS 315; 63 T.C.M. (CCH) 3048; May 19, 1992, Filed *315 Decision will be entered under Rule 155. Steven J. Cannata, for petitioners. Robert W. Towler, for respondent. GOLDBERG
GOLDBERG
MEMORANDUM OPINION GOLDBERG, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1]
Respondent determined deficiencies in petitioners' Federal income tax for the years 1980, 1981, and 1982 as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)
Sec. 6653(a)(1)
Sec. 6653(a)(2)
1980
$ 3,819
$ 191
- -
1981
$ 2,851
- $ 143
[1]
1982
$ 3,831
- $ 192
[1]
*316 Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated by this reference. Petitioners resided in Napa, California, when they filed their petition. After concessions, the sole question is whether petitioners are entitled to deduct payments, in the amounts of $ 4,000 for tax year 1980 and $ 1,000 for tax year 1981, which they describe as interest. In May 1980, petitioners expressed an interest in acquiring a property located at 230 El Camino, Napa, California (the El Camino property), a lot with a house under construction, then owned by Mr. and Mrs. Morton Roach, friends with whom petitioners owned real estate jointly. Mr. Roach, a real estate agent and investor, was in financial difficulties, due to the slow real estate market at that time. On September 8, 1980, Mr. and Mrs. Morton Roach signed a grant deed, granting petitioners an undivided 1/4 interest in the El Camino property as joint tenants. The deed was recorded in Napa County on October 21, 1980, but no transfer tax was paid. In May 1980, the house under construction on the El Camino property was subject to a construction loan of $ 142,400, on which *317 Mr. and Mrs. Roach were liable. The construction loan was due on or before February 1, 1982. During 1980, petitioners wrote 4 checks to Mr. Roach, dated May 26, September 13, November 8, and December 6, each in the amount of $ 1,000. On January 2, 1981, petitioners wrote an additional $ 1,000 check to Mr. Roach. In January 1981, petitioners decided to buy the entire interest in the El Camino property. A contract of sale was signed on January 29, 1981. No mention was made in this contract that a 1/4 interest in the property had already been deeded to petitioners in September 1980. The terms of the contract, in part, were as follows: "Sales price of home is $ 257,500, less drape and landscaping allowance of $ 2,500 and credit paid in of $ 5,000, bring balance forward -- $ 250,000 -- less existing loan of $ 142,500 (sic). Balance is $ 107,500." The contract further provided that the buyer was to assume the existing construction loan, the terms of which were 12.2 percent, interest only, due and payable February 1, 1982, at a monthly payment of $ 1,453.67. Petitioner Alan Brooks testified that the sales price of the El Camino property was $ 255,000. A grant deed granting the El *318 Camino property to petitioners as community property was signed by Mr. and Mrs. Roach on March 13, 1981, and recorded on April 14, 1981, and a transfer tax of $ 117.70 was paid. Petitioners obtained permanent financing from a lender. A subsequent deed of trust to the lender was placed in evidence, dated October 19, 1981, and describing petitioners as "joint tenants as to an undivided 1/4 interest; and ALAN BROOKS and PATTI BROOKS, husband and wife, as Community Property, as to an undivided 3/4 interest". In February and March 1981, petitioners paid Mr. and Mrs. Roach 2 monthly checks of $ 1,453.67, the amount of the interest on the construction loan. In April 1981, petitioners began paying the amount of $ 1,453.67 directly to the lender. As Mr. Roach was a real estate agent, he prepared all the documentation for the transactions between himself and petitioners. For property he held jointly with petitioners, he kept the documentation in his office. The documents were lost in a 1986 flood in Napa which affected Mr. Roach's office. Petitioners deducted as interest $ 4,000 for 1980 and $ 1,000 for 1981. Respondent determined that these amounts did not constitute interest and *319 were not deductible. Respondent's determinations in the notice of deficiency are presumed correct. Petitioner has the burden of proving them to be erroneous. Rule 142(a); . Section 163(a) allows as a deduction all interest paid or accrued within the taxable year on indebtedness. For petitioners to be entitled to an interest deduction, they must show first that an indebtedness existed and second that they paid interest on that indebtedness. Taxpayers bear the burden of proving that they are entitled to claimed deductions. . The exact nature of the interest in 1/4 of the El Camino property which petitioners acquired in 1980 is ambiguous. Petitioners testified that genuine indebtedness existed on the 1/4 interest in the El Camino property, but that all documentation of the loan was destroyed when Mr. Roach's office was flooded in 1986. Petitioners also testified that the payments were to be for interest only. Petitioners could not recall, however, the amount of the purchase price for the 1/4 interest, nor the interest rate on the debt, nor *320 whether they had signed a contract or a promissory note pertaining to the El Camino property in September 1980. Petitioners presented no other evidence of the existence of this debt, nor of the characterization of the payment, except for vaguely worded testimony that the May 1980 payment could be described as a "wait and see" and that no purchase price had been agreed upon at that time. It is clear that the purchase price in the 1981 contract of sale represented the price for the entire property, not three-fourths of it. We are not persuaded that the series of five $ 1,000 payments to Mr. and Mrs. Roach constituted interest. These payments are better explained as representing a downpayment or an option. The contract of sale explicitly mentions "credit paid in of $ 5,000". The purchase price was adjusted downward accordingly. Petitioner attempted to explain the $ 5,000 credit by testifying that he and Mr. Roach had had a business that never materialized and that Mr. Roach had applied $ 5,000 contributed to that business by Mr. Brooks to the purchase price of the house. No further evidence concerning this transaction was presented. Mr. Brooks' testimony is the only evidence *321 whatsoever that such a business existed. We are not bound to accept implausible testimony of interested parties or witnesses that is not corroborated by any other evidence. , affd. ; ; . On the basis of the evidence in the record, we hold that petitioners have not carried their burden of proof on the issue of the characterization of the five $ 1,000 payments made to Mr. Roach in 1980 and 1981 as interest. Consequently, they are not entitled to an interest deduction for the payment of these amounts. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. 50 percent of the interest due on the underpayment of tax attributable to negligence or intentional disregard of rules or regulations.↩